[No. 18280.    Department One.    March 14, 1924.]

A. L. DEVOTO, *Respondent,* v. UNITED AUTO TRANSPORTATION COMPANY, INCORPORATED, *et al., Appellants.*

E. J. THOMPSON, *Respondent,* v. UNITED AUTO TRANSPORTATION COMPANY, INCORPORATED, *et al., Appellants.*

LEO DEVOTO, *Respondent,* v. UNITED AUTO TRANSPORTATION COMPANY, INCORPORATED, *et al., Appellants.*[1]

ACTIONS (23, 24) — INSURANCE (122) — INDEMNITY INSURANCE — JOINDER OF ACTIONS—LIABILITY OF SURETY—STATUTES—CONSTRUCTION. There is a direct cause of action on the bond by persons injured, entitling the plaintiff to join the insurance company with the carrier, under Rem. Comp. Stat., § 6391, requiring auto-stage companies to procure liability and property damage insurance or a surety bond for compensation for all persons recovering for personal injuries by reason of the carrier's negligence; in view of Id., § 6384, providing that any person injured by the negligent act of such insured carriers in cities of the first class shall have a direct cause of action against the principal and surety on the bond, and Id., § 296, providing that several causes of action may be united when they arise out of the same transaction and affect all the parties.

HIGHWAYS (59)—NEGLIGENT USE—DRIVERS OF MOTOR VEHICLES— INSTRUCTIONS. In an action for injuries sustained in an automobile collision, when a stage, operating in a dense fog, crashed into the rear of an automobile in advance, it is error to instruct that the stage driver must drive at such a rate of speed as to enable him to stop within the distance disclosed by his own headlights, where

[1]Reported in 223 Pac. 1050.

there was evidence that in places the fog was so dense that the white lights of the headlights were mirrored back to the driver who could see nothing.

Evidence (200)—Opinion Evidence—Operation of Motor Vehicle. It is error to allow a witness to state his opinion as to whether an automobile driver with artificial legs was so maimed that he could not drive efficiently in an emergency.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered June 20, 1923, upon the verdict of a jury rendered in favor of the plaintiffs, in consolidated actions in tort. Reversed.

*F. A. Latcham* and *Van Dyke & Thomas,* for appellants.

*Bates & Peterson,* for respondents.

Tolman, J.—These causes all arise out of one accident and were consolidated and tried as one, resulting in a verdict awarding A. L. Devoto $250; Leo Devoto $1,500; and E. J. Thompson $1,000. From a judgment on the verdict, the defendants have appealed.

As we view the questions now to be decided, it is unnecessary to set out the details of the accident out of which the causes of action arose. It will be sufficient, we think, to say that the automobile owned and driven by respondent Thompson, in which the other respondents were riding, was proceeding along the highway from Camp Lewis to Tacoma, through a dense fog. The speed at which it was traveling, if actually moving at the moment, the condition of its lights, and the like, were all questions for the jury, which were properly submitted and are not here involved. A stage belonging to the appellant United Auto Transportation Company, Incorporated, driven by one Roy Shotwell, going in the same direction, overtook and crashed into the rear of the machine occupied by respondents. The ap-

pellant Automobile Insurance Exchange, a corporation, was joined as defendant in each case; the appellants alleging in effect that it was engaged in the business of automobile liability insurance, and at the time had on file with the proper department of the state government, and in full force and effect, a bond on which the United Auto Transportation Company was principal and on which it was the surety, in the sum of $5,000, for the benefit of any person who might sustain injury through the negligent operation of any motor vehicle by the United Auto Transportation Company.

The first assignment of error raises the question of the right of one not a passenger on the stage, but situated as were respondents here, to join the insurance company as a defendant in the action. The statute, § 5, ch. 111, Laws of 1921, p. 341 [Rem. Comp. Stat., § 6391], reads:

"The Commission shall in the granting of certificates to operate any auto transportation company, for transporting persons, and, or, property, for compensation require the owner or operator to first procure liability and property damage insurance from a company licensed to make liability insurance in the State of Washington or a surety bond of a company licensed to write surety bonds in the State of Washington on each motor propelled vehicle used or to be used in transporting persons, and, or, property, for compensation, in the amount of not to exceed $5,000.00 for any recovery for personal injury by one person and not less than $10,000.00 and in such additional amount as the commission shall determine, for all persons receiving personal injury by reason of any act of negligence and not to exceed $1,000.00 for damage to property of any person other than the assured, and maintain such liability and property damage insurance or surety bond in force on each motor propelled vehicle while so used, each policy for liability or property damage insurance or surety bond required herein,

shall be filed with the commission and kept in full force and effect and failure so to do shall be cause for the revocation of the certificate.''

It is asserted here that the department has construed this statute as not giving a direct cause of action against the insurer by requiring in all such cases a proviso to be endorsed on each bond or policy to the effect that, if a final judgment based on negligence be rendered in a court of last resort against the principal, or the assured, then the insurer agrees that, if the judgment be not paid, the judgment creditor may commence and prosecute an action against it to recover the amount of such judgment. Whatever may be the custom or rule of the department, the policy here involved bears such a rider, but we do not think that is controlling.

The statute with reference to the transportation of passengers by motor vehicles in cities of the first class, ch. 57, Laws of 1915, p. 228 [Rem. Comp. Stat., § 6384], carries a direct provision in § 3 of the act to the effect that any person injured by the negligent act of the operator shall have a direct cause of action against both the principal and the surety in the bond there provided for. Hence, it is argued, the act of 1921, containing no such direct provision, cannot be so construed; but, under the rule of *pari materia,* that by no means follows. The two acts, so far as the bond feature goes, are identical in purpose, except that one relates to operations within cities, and the other to operations without, and each is intended to create a certainty of compensation for damages negligently inflicted, whether the person damaged be a passenger or not. True, § 3, which we have quoted, does not in positive language give a direct cause of action, nor does it negative the right thereto. Inferentially it would seem that the legislature could not have con-

templated that one rule should be in force in cities and another and different rule outside of cities, with all the attendant confusion, delay, and cost to litigants which would arise therefrom; but, on the contrary, that it intended the same rule should apply to all passenger-carrying motor vehicles wherever operated. This seems evident when we consider that, if appellants' construction were to be adopted, it would be necessary to wage two suits to recover upon one cause of action, and in the second action, against the surety, it would, of course, be urged that it was not bound by the judgment against the principal which it had no opportunity to defend against, and would insist upon its right to its day in court. The legislature has always been disposed to simplify procedure. Section 296, Rem. Comp. Stat. [P. C. § 8380], reads:

"The plaintiff may unite several causes of action in the same complaint, when they all arise out of,—

.    .    .    .    .    .    ..    .    .

"8. The same transaction.

"But the causes of action so united must affect all the parties to the action, and not require different places of trial, and must be separately stated."

Under apparently similar code provisions the supreme court of Texas, in *American Automobile Insurance Co. v. Struwe,* 218 S. W. (Tex. Civ. App.) 534, said:

"Under the laws of Texas a dual suit will always be avoided whenever all parties can have a fair trial when joined in one suit. Appellee, had he so desired, could have prosecuted his claim to judgment as against Zunker and then have sued on that judgment against the insurance company, but the law does not make it imperative that he should do so, but would permit him to dispose of the whole matter in one suit."

Our own cases of *Harding v. Ostrander R. & Timber Co.,* 64 Wash. 224, 116 Pac. 635; *Welch v. Northern*

*Bank & Trust Co.,* 100 Wash. 349, 170 Pac. 1029; *Little-field v. Bowen,* 90 Wash. 286, 155 Pac. 1053, Ann Cas. 1918B 177, and *Stilwell Bros. v. Union Machinery & Supply Co.,* 94 Wash. 61, 161 Pac. 1048, while not directly in point, by their reasoning seem to lend support to this view. What is said here is not intended to in any wise affect the ruling in *Ford v. Aetna Life Insurance Co.,* 70 Wash. 29, 126 Pac. 69, and *Luger v. Windell,* 116 Wash. 375, 199 Pac. 760, or to destroy the force of any contract between insurer and insured. The contract here, however, is what the statute makes it, no more and no less, whether the instrument be in form a bond or a policy of indemnity, and we hold that it was the legislative intent by that statute to provide that one direct action should be maintained against both principal and surety.

It is urged that there was error in instructing the jury to the effect that it was the duty of the driver of the stage to drive at such a rate of speed as to enable him to stop within the distance disclosed to his view by his own headlights. In view of the evidence in this case, we fear the rule laid down is so severe as to be impracticable. One of the respondents testified to the effect that the fog lay in banks or strips, in places not so dense as to interfere with a reasonable view ahead, but, proceeding, they came into places where the fog was so dense that the white light of the headlights was mirrored back to the driver and he could see nothing in advance of his automobile. Under such conditions, shall a driver stop in the fog bank until the fog clears? If one does so, all must do so, or the danger would be thereby increased; and if all stop, how shall anyone reach his destination? It seems to us in reason that traffic must be permitted to move on the highway at all times, but that, in driving through a fog bank, each

driver must do so in a careful and prudent manner with due regard for the safety of others, and what is careful and prudent under the particular conditions shown will usually be a question for the jury.

Because of the instruction just discussed, the judgment must be reversed, and for the guidance of the court on a new trial, it may be suggested that, while it was proper to show that the driver of the stage had artificial legs, and it would also have been proper to show any act, or omission to act, arising from his unfortunate condition, which contributed to the happening of the accident, yet it was not proper to permit a witness to invade the province of the jury and, without knowing all the facts, give as his opinion that a driver so maimed could not act as efficiently in an emergency as a normal person.

Except as indicated, we find that the case was properly submitted to the jury.

Reversed and remanded for a new trial.

Main, C. J., Holcomb, Mackintosh, and Parker, JJ., concur.