[No. 27682. Department One. January 27, 1940.]

J. T. PYLE, *Respondent,* v. JAMES N. WILBERT *et al.,*
*Appellants.*[1]

[1]Reported in 98 P. (2d) 664.

*Harry M. Morey,* for appellants.

*Bernard A. Johnson* and *Robertson & Smith,* for respondent.

MILLARD, J.—About two o'clock a. m., December 6, 1938, a Chevrolet coupe operated by J. T. Pyle, who was accompanied by his mother, collided with a Buick sedan operated by Charles Wilbert, whose guests in that automobile, which was owned by Wilbert's parents, were two ladies and a gentleman, within the intersection of Freya street (a nonarterial highway) and Sprague avenue, an arterial highway, in the city of Spokane. Pyle and his mother brought this action to recover against James N. Wilbert, his wife and his son, for property damage and for personal injuries sustained as a result of the accident. Trial of the cause to a jury resulted in verdicts in favor of the plaintiffs. From the judgment entered, motion for judgment notwithstanding the verdict having been overruled, the defendants appealed only from the judgment in favor of J. T. Pyle, as they satisfied the judgment in favor of J. T. Pyle's mother.

The contention of counsel for appellant that the trial court erred in denying the motions for nonsuit, directed verdict, and judgment notwithstanding the verdict, on which is bottomed the argument that the evidence adduced precluded any right of the respondent to recover, can not be sustained unless we can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to justify the verdict.

"An involuntary nonsuit and dismissal of the plaintiff's cause of action is like a directed verdict or granting a judgment notwithstanding the verdict after verdict by the trial court. If there is competent proof to be considered by the jury, which would sustain a recovery, it should not be granted. [Citing cases.]

"The fact that there was evidence on behalf of the defendant controverting that of the plaintiff is not to be considered upon such motions." *Norton v. Payne,* 154 Wash. 241, 281 Pac. 991.

In passing on the question whether the motion for judgment notwithstanding the verdict should have been granted, we must regard as true all competent evidence in the record which is favorable to the respondent, and we must give to the respondent the benefit of every favorable inference which may reasonably be drawn from such evidence.

"Where the minds of reasonable men may differ, the question should be submitted to the jury. If, when so questioned we find there is substantial evidence to sustain the verdict, the judgment must be affirmed." *Gibson v. Spokane United Railways,* 197 Wash. 58, 84 P. (2d) 349.

If we apply the foregoing principles to the facts, summarized as follows, in the case at bar, it is manifest that the trial court did not err in overruling appellants' motions:

Respondent was proceeding north on Freya street (a nonarterial highway), the course of which is north and south. Appellant Wilbert was proceeding easterly on Sprague avenue, an east and west arterial highway which intersects Freya street at right angles. A stop sign was located twenty-six feet south of the south curb line of Sprague avenue. On the southeast corner of the intersection is a drug store which extends back about eighteen feet from the south curb line. On the

southwest corner, and setting back approximately sixty feet, is a service station.

Respondent testified that, upon arrival at Sprague avenue, he stopped for the arterial highway at "about the sidewalk or stop sign;" he then looked for traffic to left, or west, which was the direction from which appellants' automobile proceeded, and had a vision of at least two hundred and fifty feet, but that he saw no traffic approaching at all from that direction. He then shifted into low gear and proceeded at the rate of about four miles an hour into the intersection, looking to the right for traffic from the east, when his automobile was struck by the front of appellants' car with such force that respondent's automobile was hurled about thirty feet, the rear end of his automobile striking against an electric light pole on the northeast corner of the intersection. Respondent was thrown from the automobile to the pavement, and his mother was thrown upon the sidewalk on the northeast corner after collision of respondent's automobile with the electric light pole.

Counsel for appellant insist that respondent stopped his automobile before entering the intersection twenty-four feet south of the curb line of the arterial highway when he had a limited view of only two hundred and fifty feet to the west, which was contrary to the statutory requirement (Rem. Rev. Stat., Vol. 7A, § 6360-90 [P. C. § 2696-848]) that the operator of a motor vehicle must stop that vehicle immediately before entering upon an arterial highway; therefore, the contributory negligence of respondent in failing to stop at the arterial highway bars recovery.

There is evidence to the effect that respondent stopped his car about two feet ahead of the stop sign or twenty-four feet south of the curb line of the arterial highway. Whether respondent was confused in so testifying, in view of his other testimony that he stopped

his car about the sidewalk, was for the jury to consider in weighing the evidence.

■ The automobile of appellants, the jury was warranted in finding under the testimony, was traveling at not less than sixty-five miles an hour when about three blocks west of the intersection of Freya street and Sprague avenue. The speed limit at that point is twenty-five miles an hour. Two police officers testified they measured the skid marks of appellants' automobile which disclosed that that automobile skidded sixty feet before striking respondent's automobile and stopped about four feet east of the center line of Freya street, where it came to rest faced to the northeast. The driver of appellants' automobile admitted that, a block or so west of the place of collision, he was traveling not to exceed forty miles an hour; that, when he first noticed respondent's automobile, he was probably one hundred or one hundred and twenty-five feet west of the intersection where the accident occurred; and then he

" . . . took my foot off the gas, expecting him to stop, slowing up a little, and when I got within sixty or seventy feet from the intersection I noticed he wasn't stopping so I immediately applied my brakes and then the collision occurred."

He testified that he entered the intersection at a speed of from fifteen to twenty miles an hour.

It is clear that the evidence is sufficient to sustain the jury's verdict—in view of the skid marks and the testimony of the excessive speed at which witnesses testified the automobile was proceeding two blocks west of the intersection—of negligence. It was within the province of the jury to disbelieve the testimony of the operator of appellants' automobile that that vehicle was traveling not to exceed forty miles an hour a couple of blocks west of the scene of the accident, and

that he did not see respondent's automobile until the time he stated, and that his rate of speed when he entered the intersection did not exceed twenty miles an hour. Evidence as to distance respondent's automobile was hurled by the collision as well as the distance appellants' automobile skidded before striking respondent's automobile constitutes persuasive evidence of the rate of speed—which the jury doubtless believed (which was a question for its determination) exceeded the speed limit—of the automobile by which respondent's automobile was struck.

Even if the testimony of the operator of appellants' automobile as to the speed at which he was traveling stood uncontradicted, the jury was not bound to accept as true the testimony of that interested witness. *Day v. Polley,* 147 Wash. 419, 266 Pac. 169.

We did not hold, as counsel for appellants contends, in *Hamilton v. Cadwell,* 195 Wash. 683, 81 P. (2d) 815, that the failure of the operator of an automobile to stop immediately before entering upon an arterial highway, when challenged by a stop sign which was in that case twenty-eight feet from intersection, constituted such contributory negligence as barred recovery. We stated that the manifest purpose of the then statute (Rem. Rev. Stat., § 6362-40) was to require the operator of the vehicle to stop immediately before entering the arterial highway at a point where he can see traffic approaching from either direction on the arterial highway.

"In the case of *Hamilton v. Cadwell,* 195 Wash. 683, 81 P. (2d) 815, we held that traffic approaching an arterial highway is required to stop immediately before entering upon the highway, at a point where the disfavored driver can see traffic approaching from either direction on the arterial highway." *Hefner v. Pattee,* 1 Wn. (2d) 607, 96 P. (2d) 583.

In the case at bar, the respondent stopped at a point where he had an unobstructed view of two hundred and fifty feet or more to the west. He was not required under the statute to run his car to the curb line of Sprague avenue. Had he done that, he would have stopped on the cross-walk of Freya street, which is reserved for pedestrian traffic. Respondent stopped at a point where he would have the protection of the statute. He took the precaution of looking when at the place necessary to exercise such precaution, and the motor vehicle in the favored position was then not within the respondent's (the disfavored driver) range of visibility. As we said in *Gibson v. Spokane United Railways*, 197 Wash. 58, 84 P. (2d) 349:

"Where the operator of an automobile takes some precaution, such as looking when at the place necessary to exercise such precaution, and the motor vehicle in the favored position is then not within the disfavored driver's range of visibility—one hundred to one hundred and seventy-five feet in the case at bar—and the favored operator at the time is violating the law, relating to speed, thus being guilty of negligence *per se,* and the automobile which is in the disfavored position is struck in the rear when across, or nearly across, the street intersection by the car in the favored position, the question of contributory negligence on the part of the operator of the car in the disfavored position is plainly one for the jury. There would be no justification for the court to assume that the disfavored driver did not under such facts have a proper margin of safety in crossing. Respondents had the right to assume that the driver of any motor vehicle—whether or not it was one hundred to one hundred and seventy-five feet east of the intersection—approaching from the right would not travel in excess of the legal rate of speed, unless, of course, respondents had actual notice that a machine was approaching from the right at an excessive rate of speed; such notice respondents did not have, the jury were warranted in finding."

It could not be held as a matter of law, even if respondent had seen appellants' automobile when respondent attempted to cross the arterial, that there was not a reasonable margin of safety. If appellants' automobile had not exceeded the speed limit in approaching the intersection—a fact the jury was warranted in finding under the evidence—respondent would have had sufficient time in which to have passed out of the intersection and there would have been no collision.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.