[No. 28117. *En Banc.* March 27, 1941.]

MELVIN WEAVER *et al., Respondents,* v. McCLINTOCK-TRUNKEY COMPANY, *Appellant.*[1]

[1]Reported in 111 P. (2d) 570; 114 P. (2d) 1004.

*E. A. Cornelius,* for appellant.

*H. E. T. Herman* and *Richard S. Munter,* for respondents.

MILLARD, J. — Plaintiffs, a marital community, brought this action to recover against defendant corporation for personal injuries alleged to have been sustained by plaintiff wife in consequence of emergency stop of automobile, in which she was riding, to avoid collision with negligently operated truck of the defendant. The cause was tried to the court, which found that, because of the negligence of the operator of defendant's truck, the operator of an automobile, in

which plaintiff wife was a passenger, was compelled to apply the brakes of his automobile in such an abrupt manner as to suddenly stop the automobile, which sudden halt hurled plaintiff wife from her seat in the automobile with resultant injuries which entitled her to recovery, in the amount of fifteen hundred dollars. From judgment entered in consonance with those findings, the defendant appealed.

Counsel for respondents contend that the proximate cause of injuries to respondent wife was appellant's negligence in emerging from the alley and crossing the sidewalk without bringing its truck to a full stop, and yielding the right of way to all vehicles upon Adams street, as required by Spokane city ordinance No. C6072 and the statute (Rem. Rev. Stat., Vol. 7A, § 6360-92 [P. C. § 2696-850]), reading, respectively, as follows:

"Section 65 . . . It shall be unlawful for the operator of a vehicle to emerge from any alley, driveway, building exit, private way or private property or from off the roadway of any public highway, onto the roadway of any public highway or across a sidewalk or into the sidewalk area extending across any such alley, driveway, building exit, private way or private property without bringing such vehicle to a full stop and yielding the right of way to all pedestrians upon such sidewalk and all vehicles upon such public highway."

"It shall be unlawful for the operator of a vehicle to emerge from any alley, driveway, building exit, private way or private property or from off the roadway of any public highway, onto the roadway of any public highway or across a sidewalk or into the sidewalk area extending across any such alley, driveway, building exit, private way or private property without bringing such vehicle to a full stop and yielding the right of way to all pedestrians upon such sidewalk and all vehicles upon such public highway."

That is, argue counsel for respondents, appellant's negligence, which was the proximate cause of the

emergency stop of the automobile with resultant injuries to respondent wife, consisted of appellant's violation in two respects of both the city ordinance and statute quoted above: (1) Failure to bring the truck to a complete stop, before proceeding across the sidewalk onto Adams street, at a point where the operator of the truck could see the automobile going north on Adams street; and (2) failure to yield the right of way to the automobile on Adams street.

Counsel for appellant insists that, as the truck stopped at the building line before proceeding across the sidewalk, appellant was not guilty of negligence. It is contended that respondent wife, who was an occupant of an automobile whose operator brought that vehicle to an abrupt stop under the mistaken belief that an emergency had been created by another motor vehicle, can not recover against the owner of the second vehicle "which was being driven without negligence."

Whether appellant was negligent and whether as a result of that negligence respondent wife was injured, are questions of fact which were determined adversely to appellant by the court, which was the trier of the facts. If there is evidence to support the trial court's findings, the findings will not be disturbed on appeal. *Meacham v. Dioguardi,* 166 Wash. 684, 9 P. (2d) 293; *Hilliard v. United Pacific Casualty Ins. Co.,* 195 Wash. 478, 81 P. (2d) 513, and *Sears, Roebuck & Co. v. Nilsen,* 175 Wash. 237, 27 P. (2d) 128.

The facts are summarized as follows: July 26, 1939, respondent wife was riding as a guest in the rear seat of an automobile operated by Roy Smith in the city of Spokane. Smith's wife was in the front seat to the right of her husband. The automobile was traveling at the rate of twenty to twenty-five miles an hour in a northerly direction six feet west of the east curb on Adams street, which street is fifty-one feet wide from

curb to curb. The center forty-seven feet of that street is paved with concrete. Between the concrete surface and the curbs are two brick gutters each two feet wide and a part of the street. On the east side of Adams street is a sidewalk extending east from the curb a distance of twelve feet, one inch.

In the center of Adams street, north of the north line of an alley projected, which alley parallels First avenue to the north and Second avenue to the south and intersects Adams street, is a concrete pillar which supports the Northern Pacific Railway Company's viaduct. The alley, or private driveway, which is sixteen feet wide and immediately south of the viaduct, extends from Adams street east to Jefferson street, and is not paved. Immediately east of the sidewalk, described above, an approach of concrete two feet wide extends easterly into the alley. Adjoining the north side of the alley and extending to the east property line of Adams street is a high concrete retaining wall which supports the fill on which are laid the railway tracks passing over the Adams street viaduct. Adjoining this alley on the south, and extending to the east property line on Adams street, is a large warehouse several stories in height.

One Glanville, an employee of appellant, was operating appellant's truck on the north side of the alley westerly towards Adams street at a speed, the operator testified, of four to five miles an hour. When the truck arrived at a point where its front wheels were at the concrete approach, the driver, so he testified, brought the truck to a full stop as required by the city ordinance and the statute quoted above. The driver then proceeded in low gear at the rate of four to five miles an hour to cross the sidewalk so as to make a right turn on Adams street. When his truck was at a point where the extreme front end of the truck was approxi-

mately eight feet upon the sidewalk he saw the automobile, operated by Roy Smith, coming from the south on Adams street approximately forty feet south of the alley. The truck driver further testified that he applied his brakes and stopped the truck when the front wheels of his truck were on the approach at the west edge of the sidewalk.

The truck is about nineteen feet long. From the front bumper to where the operator of the truck sat in the cab was a distance of seven feet. When the truck stopped east of the east property line adjoining Adams street, the truck driver could not possibly see anything, as far as Adams street is concerned, except that which was directly in front of the alley, for the reason that the concrete viaduct on one side cut off his view and the warehouse cut off his view on the other side.

Mr. Smith testified that his automobile was traveling at the rate of twenty to twenty-five miles an hour and that the truck was proceeding at the rate of twelve to fifteen miles an hour; that the view of a driver proceeding north on Adams street, and the view of traffic emerging from the alley, were obstructed by reason of cars parked along the curb on the east side of Adams street. This is corroborated by the testimony of appellant's driver.

Mr. Smith, the operator of the automobile, and his wife testified that they did not see the truck until it was almost across the sidewalk space and down across the gutter at the east curb line of Adams street; that the truck was about at the center of the sidewalk when they first saw it and that Smith immediately applied his brakes. The abrupt manner in which the brakes were applied in an effort to avoid colliding with the truck hurled respondent wife from the back

seat to the floor of the automobile whereby she sustained the injuries for which recovery is sought. The collision was averted. When both vehicles came to rest they were separated by a space of from three to five feet.

■ If, as appellant insists, its truck stopped at the building line before proceeding across the sidewalk, appellant is not absolved of negligence. If the truck failed to yield the right of way to the automobile, conceding the truck stopped, as the truck driver testified, before proceeding across the sidewalk onto Adams street, such infraction of the ordinance and statute constituted negligence. The purpose of the city ordinance and the state law is to require the operator of a vehicle, emerging from an alley, as in the case at bar, onto a public highway, to stop, before entering upon such public highway, at a point where he can see traffic approaching from either direction upon such highway. *Hamilton v. Cadwell,* 195 Wash. 683, 81 P. (2d) 815; *Hefner v. Pattee,* 1 Wn. (2d) 607, 96 P. (2d) 583; and *Pyle v. Wilbert,* 2 Wn. (2d) 429, 98 P. (2d) 664.

■ Appellant's violation of the city ordinance and state law constituted a negligent disregard of the rights of others upon the public highway onto which the appellant emerged with its truck, as a result of which negligence respondent wife was injured.

■ "The actor's negligent conduct is a legal cause of harm to another if

"(a) his conduct is a substantial factor in bringing about the harm, and

"(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." Restatement of the Law of Torts, 1159, § 431.

■ Even if, as counsel for appellant insists, the operator of the automobile in which respondent wife was riding were guilty of contributory negligence in stopping too suddenly in order to avoid the threatened collision, his negligence could not be imputed to his passenger or guest.

"A passenger or guest in a vehicle is not barred from recovery for harm resulting from the negligence of a third person by the contributory negligence of his carrier or host." Restatement of the Law of Torts, 1272, § 490.

■ Appellant next complains that the award for injuries sustained by Mrs. Weaver is excessive.

Respondent wife has suffered severe headaches and loss of sleep almost continuously since her injuries more than a year ago. The trial court specifically found that she suffered a very great nervous shock, had undergone great pain and suffering, and was permanently partially disabled.

The compensation for injuries to respondent wife is in harmony with our holding in *Taylor v. Lubetich,* 2 Wn. (2d) 6, 97 P. (2d) 142, that the plaintiff was entitled to recovery of seven thousand dollars for nervous shock suffered by him as a result of an accident and which would be sustained by him in the future, and for his bodily injuries. Presumably, the judgment of the trial court is dispassionate and, under the evidence which supports the findings, the judgment should be sustained.

The judgment is affirmed.

BEALS, MAIN, JEFFERS, and DRIVER, JJ., concur.

SIMPSON, J. (dissenting)—As I view the evidence, appellant's driver complied with the requirements of the ordinance and was not guilty of any negligence. The injury was caused by the unwarranted acts of

the driver of the car in which respondent Mrs. Weaver was riding.

I therefore dissent.

ROBINSON, C. J., BLAKE, and STEINERT, JJ., concur with SIMPSON, J.

### ON REHEARING.

[*En Banc.* June 30, 1941.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the *En Banc* opinion heretofore filed herein.

[1]Reported in 111 P. (2d) 597.